# Rommel Brothers, Appellees, v. W. H. Wenks, Appellant.

## Gen. No. 5,892.

1. ASSUMPSIT, ACTION OF, § 46*—*necessity for privity of contract.* In an action on the common counts for money had and received, the right to recover does not depend on privity of contract but is governed by principles of equity, although the action is at law.

2. ASSUMPSIT, ACTION OF, § 44*—*when lies against person receiving overpayment on check.* Where a check is given for a certain amount and cashed by the bank for a greater amount, owing to an ambiguity, the drawer may treat the bank as justified in paying the greater amount and sue the party who had the check cashed at the bank to recover the overpayment, in an action for money had and received.

3. ASSUMPSIT, ACTION OF, § 89*—*when evidence sufficient to show amount received for check.* In an action for money had and received against a person who cashed plaintiff's check at the bank for a greater amount than the check was intended to be given, evidence *held* sufficient to show that the defendant received the greater sum and that he was not entitled to the whole amount.

4. EVIDENCE, § 73*—*when rendered admissible by cross-examination.* Not error for court to admit evidence made necessary and proper by cross-examination.

5. INSTRUCTIONS, § 107*—*when rulings on proper.* Action of court in giving certain instructions and in refusing requested instructions, *held* proper as against complaints thereto based on an unsound position of appellants.

---

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

6. APPEAL AND ERROR, § 1523*—*when giving of instruction harmless.* The giving of an instruction so worded that it might be thought to cast distrust upon the arguments of counsel and also indicating that in ascertaining the facts the jury were not to consider the absence of testimony, *held* harmless.

Appeal from the Circuit Court of Rock Island county; the Hon. ROBERT W. OLMSTED, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914.

J. T. & S. R. KENWORTHY, for appellant.

SEARLE & MARSHALL, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Rommel Brothers are partners in the business of farming near the village of Edgington. Miller Westbay is in the harness business at Edgington. W. H. Wenks is a merchant at the same place. Robert P. Waite lives at Reynolds and runs two private banks, one at Reynolds and one at Taylor Ridge, the latter named the Bank of Taylor Ridge, and conducted by Jennie McConnell, as cashier. Edgington is five miles from Taylor Ridge. Rommel Brothers had an account with the Bank of Taylor Ridge and had an arrangement by which they could overdraw their account. There was no bank at Edgington and Wenks was accustomed to cash checks for people of that vicinity. On March 28, 1910, Rommel Brothers had occasion to pay Westbay $2.75, and did so by a check on the Bank of Taylor Ridge, payable to the order of Westbay, but by mistake made his name read "Miller Westay." The words in the check were "two seventy-five dollars." In the margin was a dollar sign. Next to the right of that a figure "2" and then next to the right of that and a little higher up than the figure "2" the figures "75," and still further to the right two ciphers with a line drawn underneath. The words are ambiguous. By section 17 of the Negotiable Instrument Law of 1907

(J. & A. ¶ 7656), where there is a discrepancy between the words and the figures in such an instrument, the words control, but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount. Reference being had to these figures the reasonable construction of the check is that it is for $275. Westbay received it for $2.75. A day or so later he took it to the store of Wenks and asked Wenks to cash it and Wenks gave him $2.75 for it. Shortly after this check was issued, one of the Rommels was in the Bank of Taylor Ridge and told the cashier that they had certain checks outstanding, including one to Westbay for $2.75 and asked if they had money enough to their credit to pay those checks and the cashier gave them the amount of their balance, which was a few cents less than Rommel had supposed, and he deposited enough to cover those outstanding checks. On April 8, 1910, Wenks went into the Bank of Taylor Ridge with a number of checks, and asked the cashier to cash them. Among them was this check. The cashier cashed the checks for Wenks. It is claimed that the cashier paid Wenks $275 upon this check. She charged the check to Rommel Brothers at $275, thereby creating an overdraft. Some days later Rommel Brothers ascertained there was an overdraft to their account and went to the bank and saw the check and brought Wenks and Waite together. It is a disputed question whether Wenks admitted that he received $275 on the check. He refused to refund. Afterwards this suit was instituted and a declaration was filed, containing the common counts only, to which was attached a statement of the alleged facts and charging that the check was drawn to pay an indebtedness of $2.75, and by mistake was so drawn as to direct the payment of $275; that the payee indorsed and delivered it to Wenks as a check for $2.75 and that Wenks received $275 from the bank thereon, all of which except $2.75 was paid to Wenks by mistake. Wenks pleaded the general issue and there was a jury trial and a verdict and a judgment for Rommel

Brothers for $308.05, being $272.25 and the interest thereon to the date of the trial. Wenks appeals.

It is proved without dispute that the check was issued to pay Westbay $2.75 and that Wenks paid Westbay $2.75 for it and that he presented it at the bank on April 8th, with other checks, and that the checks were cashed by the cashier. Miss McConnell testified that the books showed the payment of $275 on this check to Wenks and that she had the recollection, independent of the books, that she paid him $275 on that check. The abstract makes her say, on cross-examination, that she had no knowledge that Wenks presented the Rommel check. The record shows that she testified exactly the contrary to that on cross-examination. Waite testified that he was present near the cashier when Wenks presented the checks and that he heard the cashier count out to Wenks somewhere between $300 and $400, but the precise amount he did not remember. The cashier presented figures from the books showing the name and the amount of each of the other checks which Wenks then cashed, and they were for small sums in the aggregate. The cashier testified that she balanced her cash each night and that she did so on the close of business on that day and that her cash exactly balanced, counting this check at $275. Wenks testified that he did not know how much the checks amounted to nor how much money he received. He testified that he told Waite and Rommel that he did not get $275 on this check and this was denied by Waite and partially denied by Rommel, but Wenks did not testify that he did not receive $275 on this check. It is entirely clear that the great weight of the evidence is that he did receive $275 thereon. He therefore received $272.25 to which he was not entitled, and his declaration that he would not refund until compelled to do so waived any necessity for a demand.

Appellant contends that if he did receive that sum in excess he is indebted to the bank alone therefor and not to Rommel Brothers, who have not yet paid the

bank the amount of the overdraft. He contends that the question whether or not the bank was negligent in paying $275 on this check instead of $2.75 was material to be tried by the jury, and he makes an ingenious argument, which carried to its logical conclusion might relieve him from refunding the excess to anybody. These contentions do not meet our approval. He received this money on the written order of Rommel Brothers. The check was carelessly drawn and might easily be understood to be a check for $275. Rommel Brothers were not required to litigate that question with the bank. They had a right to treat the bank as justified in paying that sum. It has been charged against Rommel Brothers in the bank and they have not repudiated the charge and were not required to do so. Wenks has money to which he is not entitled which he has received upon the order of Rommel Brothers and which is charged to their account. If privity of contract were necessary to be shown, there is sufficient here to uphold this suit by Rommel Brothers against Wenks. But the common counts are, among other things, for money had and received, and the right to recover under that count does not depend upon privity of contract, but is governed by principles of equity, although the action is a law. "The action is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex aequo et bono* belongs to another." *Highway Commissioners v. City of Bloomington*, 253 Ill. 164, on page 174. But appellant expresses a fear that he may be liable to another action by Waite for the same money. The proof shows that Waite took one of appellees to Waite's attorney and laid the facts before him and they agreed that the attorney should bring the action against Wenks in such form as he considered legal and proper. Waite attended the trial and was a witness for appellees. He

will be estopped from maintaining an action against Wenks for the same money.

Complaint is made of rulings upon evidence in admitting conversations between Waite and one of the Rommels with the attorney who brought the suit. This evidence was made necessary and proper by the cross-examination of the two appellees. One of them was made to state on cross-examination that the suit was brought without his knowledge or consent. The other appellee was cross-examined on the same subject and left the matter of his authorizing the suit in some doubt. It then became proper to show that Waite and one of the appellees authorized the attorney to bring the suit in such name as he thought best. The evidence did not injure appellant. The court did not err in that respect.

Appellant complains of instructions given at the request of appellees and of the refusal to give instructions requested by appellant. These complaints are mostly based upon appellant's position that it was essential for appellees to prove that they made the mistake which led to the overpayment and that the bank did not make a mistake in paying $275 on the check, and that if the proof showed that the bank was negligent, then plaintiffs could not recover. The rulings of the court on those instructions were correct, because this position by appellant is unsound. Some other criticisms on appellees' instructions are not well founded. One instruction, given at appellees' request, was intended to tell the jury that they must look to the evidence and not to the arguments of counsel to ascertain what facts were proved, but it was so worded that it might be thought to cast distrust upon the arguments of counsel. It also indicated that in ascertaining the facts, the jury were not to consider the absence of testimony. The only absence of material testimony to which this would apply was the failure of Wenks to testify that he did not receive $275 on the check, but in that respect the instruction was favorable, instead of

harmful, to appellant.  We do not approve the form of the instruction, but consider it harmless in this case. The verdict does substantial justice.

The judgment is affirmed.

*Affirmed.*